# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **CEASAR SMITH** | **CASE NO. 3:19-CV-00492** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **GE HEALTHCARE, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions to dismiss for failure to state a claim upon which relief can be granted – the first [doc. # 5] filed by defendant, McKesson Corporation, and the second [doc. # 8] filed by defendants, General Electric Company and GE Healthcare, Inc. (collectively, "GEHC"). For reasons explained below, it is recommended that the motions be GRANTED-IN-PART and DENIED-IN-PART.

## Background

On April 17, 2019, plaintiff Ceasar Smith filed the above-captioned lawsuit against defendants, General Electric Company; GE Healthcare, Inc.; GE Healthcare AS; and McKesson Corporation ("McKesson"), for injuries he sustained following receipt of intravenous injections of Omniscan, a gadolinium-based contrast agent ("GBCA") manufactured by GEHC and distributed by McKesson. (Compl. ¶¶ 1–15, [doc. # 1]). According to Smith, he received the Omniscan injections in connection with several magnetic resonance imaging ("MRI") scans and soon after developed Gadolinium Deposition Disease ("GDD"), a disease that occurs in patients

who have received a GBCA, with symptoms consistent with the toxic effects of retained gadolinium. *Id.,* ¶¶ 19-20.[1]

Smith alleged that the Omniscan he received was manufactured by the "Defendants," which he defined as *all* the defendants in the suit. *Id*., ¶¶ 12, 24. Smith further alleged that, for years, defendants knew, or should have known of the toxic effects of Omniscan on patients with normal or near-normal kidney function, yet they failed to warn healthcare providers and consumers of the risks associated with GBCAs. *Id.* ¶¶ 25-31. Smith claims that he would not have received a GBCA, and would not have been afflicted with GDD, had he and/or his healthcare provider been warned of the risks. *Id.* ¶ 32.

Smith's complaint asserted the following causes of action: (1) strict liability–failure to warn; (2) negligence; (3) negligent misrepresentation; (4) negligence per se; (5) breach of express warranty; (6) breach of implied warranty; (7) fraudulent misrepresentation and concealment; and (8) civil battery. *Id.,* ¶¶ 58-133. He seeks recovery for compensatory and punitive damages, plus attorney's fees and costs.

On May 29, 2019, McKesson filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. [doc. # 5]. McKesson contends that (1) plaintiff's allegations are conclusory and fail to meet the requisite pleading standard; (2) plaintiff's claims premised on failure to warn are barred by federal preemption; and (3) plaintiff failed to plead his causes of action for negligent misrepresentation and fraudulent misrepresentation/concealment with particularity under Fed. R. Civ. P. 9(b).

---

[1] In his opposition to McKesson's motion, Smith stated that he received injections on October 3, 2014, and October 24, 2016. (Pl. Opp. Memo., pg. 14 [doc. # 13]).

On June 21, 2019, GEHC filed their own motion to dismiss for failure to state a claim upon which relief can be granted. [doc. # 8]. GEHC argued that (1) none of plaintiff's causes of action are permissible outside of the Louisiana Products Liability Act ("LPLA"), which otherwise provides the exclusive remedy against a manufacturer for damages caused by its product; and (2) even if plaintiff's claims were asserted under the LPLA, the allegations remain conclusory and fail to meet the requisite pleading standard.

Smith filed his oppositions to defendants' motions to dismiss on June 28 and July 3, 2019. [doc. #s 13 & 16]. Movants filed their reply briefs on July 10 and 16, 2019. [doc. #s 19 & 22]. Thus, the matter is ripe.

## **Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958). The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert, supra*.[2] Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. In addition, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Rule 9(b) requires that circumstances constituting fraud or mistake be alleged with particularity. Fed.R.Civ.P. 9(b). The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Allegations of fraud under Louisiana law asserted in federal court implicate the

---

[2] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

4

heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D. La. Nov. 20, 2008). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). At minimum, however, Rule 9(b) requires a plaintiff pleading fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted). Nonetheless, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190.

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

## Choice of Law

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This Court applies the choice of law rules of the forum

state—Louisiana—to determine which state's law governs. *PHI, Inc. v. Rolls-Royce Corp.*, No. CIV.A. 08-1406, 2010 WL 883794, at *5 (W.D. La. Mar. 9, 2010) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Louisiana's choice of law rules are codified in Book IV of the Louisiana Civil Code. Article 3545 provides:

> [d]elictual and quasi-delictual liability for injury caused by a product, as well as damages, whether compensatory, special, or punitive, are governed by the law of this state: (1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state.

In this products liability suit, Smith alleged that he paid for and was injected with Omniscan in Louisiana. (Compl. ¶ 17). He suffered injury and was treated for Gadolinium Deposition Disease in Louisiana. *Id*. Therefore, because he is a Louisiana domiciliary (Compl., ¶ 16), who sustained injuries in Louisiana, his claims are governed by Louisiana law.[3]

To determine Louisiana law, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante,* is a secondary law source in Louisiana." *Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 246 (5th Cir. 2014) (citation omitted). Thus, this court must look first to the LPLA, and only secondarily to judicial decisions (i.e., decisions of the Louisiana Supreme Court). *Id*., *see also Moore v. State Farm Fire & Casualty Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citation omitted).

---

[3] In addition, no party contests that the substantive issues raised by defendants' motions are governed by Louisiana law. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).

**Discussion**

**I.     GEHC's Motion**

   a)     LPLA Exclusivity

Under Louisiana law, the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products," and a "claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in" the LPLA. La. R.S. 9:2800.52.[4]

Courts routinely dismiss claims against manufacturers that do not arise under the LPLA. *See e.g.*, *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (affirming dismissal of plaintiff's claims for negligence, fraudulent misrepresentation, breach of implied warranty, market share liability, and civil conspiracy); *Guillot v. Aventis Pasteur, Inc.*, No. 02-3373, 2013 WL 4508003, at *3 n.5 (E.D. La. Aug. 22, 2013) (finding that tort claim for civil battery is "not available against [the] manufacturer defendants due to the LPLA's exclusivity provision"). *King v. Bayer Pharm. Corp.*, No. 09-0465, 2009 WL 2135223, at *4 (W.D. La. July 13, 2009) ("Plaintiffs' claims against Defendants for strict liability, negligence and negligence per se are not viable as independent theories of recovery outside of the LPLA framework. The LPLA's exclusivity provision further precludes Plaintiffs' claim[] for . . . negligent misrepresentation.") (internal citations omitted)). *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d

---

[4] The LPLA defines manufacturer as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce." La. R.S. § 9:2800.53. Smith alleged, and GEHC does not dispute, that GEHC manufactures, markets, and sells Omniscan, *see* Compl. ¶¶ 5, 7). Therefore, GEHC meets the definition of a manufacturer.

759, 763 (W.D. La. 2000) (dismissing plaintiff's claims for, *inter alia*, negligence, breach of implied warranty, fraudulent misrepresentation, and fraud by concealment).

Smith "does not contest that any cause of action which does not arise under the LPLA is inappropriate, including its [sic] request for punitive damages and attorney's fees." [doc. # 16, pg. 6]. Accordingly, because Smith's strict liability (insofar as he endeavors to assert a freestanding claim for such independent of the LPLA), negligence, negligent misrepresentation, breach of implied warranty,[5] fraudulent misrepresentation and concealment, and civil battery claims are not cognizable under the LPLA, and must be dismissed.

Further, Smith asserted his negligence per se claim pursuant to federal law, for Food & Drug Administration ("FDA") and Federal Food, Drug & Cosmetic Act ("FDCA") violations. (Compl. ¶¶ 92-102) (citing 21 C.F.R. §§ 201.57, 201.80, 201.128; 21 U.S.C. §§ 331, 352). However, "Louisiana does not recognize any claim for violations of FDA [or FDCA] regulations. The only remedies available to plaintiff[] in this case are provided in the LPLA." *King*, 2009 WL 2135223, at *3 (quoting *Doucet v. Danek Med., Inc.*, No. 96-2439, 1999 WL 1129648, at *1 n.4 (W.D. La. June 28, 1999)). Therefore, Smith's negligence per se claim also should be dismissed.

b)      <u>Sufficiency of the LPLA Allegations</u>

Under the LPLA, a manufacturer is liable to a claimant for damage proximately caused by a product only if the product is unreasonably dangerous. La. R.S. 9:2800.54(A). A product is

---

[5] Under Louisiana law, "breach of implied warranty or redhibition is not available as a theory of recovery for personal injury . . ." *Jefferson, supra*. Although plaintiff alleged economic loss associated with his breach of implied warranty claim, he did not advance a redhibition claim in response to defendants' motion, and, in fact, conceded that all non-LPLA claims were inappropriate. Accordingly, the court will facilitate plaintiff's will.

8

unreasonably dangerous "if and only if" it is unreasonably dangerous (1) in construction or composition; (2) in design; (3) because of inadequate warning; or (4) because it does not conform to an express warranty. La. R.S. 9:2800.54(B).

In his complaint, Smith endeavored to assert claims for failure to warn and for breach of express warranty. (Compl. ¶¶ 58-61, 103-111). In his opposition brief, however, he also advanced a claim for unreasonably dangerous design. [doc. # 16, pgs. 10–11]. GEHC contends that these claims fail because Smith did not explicitly assert a claim under the LPLA. It is manifest, however, that a complaint need not "correctly specify the legal theory giving rise to the claim for relief." *Gilbert, supra*. Further, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds, supra*. Because failure to warn, breach of express warranty, and unreasonably dangerous design are cognizable under the LPLA, the court will proceed to determine whether Smith alleged sufficient facts to support these claims. *See King*, 2009 WL 2135223, at *5 (complaint contained "the requisite factual allegations to state a claim under the LPLA" even though plaintiffs failed to correctly categorize their claims).

> To state a cause of action under the LPLA, a plaintiff must allege:
>
> 1. that the defendant is a manufacturer of the product;
>
> 2. that the claimant's damage was proximately caused by a characteristic of the product;
>
> 3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and
>
> 4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jefferson*, 106 F.3d at 1251.

Here, Smith alleged: (1) GEHC manufactured the product at issue— Omniscan; (2) his injuries were foreseeable because studies demonstrated that the weak protective layer coating Omniscan failed to prevent gadolinium, a highly toxic heavy metal, from coming in contact with human tissue; and (3) his damage arose from a normal use of the product—intravenous injection of the product in conjunction with an MRI. (Compl. ¶¶ 2–3, 7, 21-27, 30, 33, 36-37, 139; *see generally* Compl.). Thus, to survive dismissal, Smith also must allege facts to show that the product is unreasonably dangerous because of an inadequate warning, failure to conform to an express warranty, or a defective design. *See* La. R.S. 9:2800.54.

*1. Failure to Warn*

"A claim premised on a failure to warn requires that the plaintiff prove that the device's inadequate warning rendered the device 'unreasonably dangerous.'" *Perez v. Michael Weinig, Inc.*, No. CIV.A. 304CV0448, 2005 WL 1630018, at *6 (W.D. La. July 7, 2005). Under the LPLA, a product is unreasonably dangerous "if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. R.S. 9:2800.57(A). Therefore, to maintain a failure to warn claim, "a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 264 (5th Cir. 2002).

Smith contends that during the years GEHC manufactured and sold Omniscan, there have been "numerous case reports, studies, assessments, papers, peer-reviewed literature, and other

clinical data that have described and/or demonstrated GDD in connection with the use of GBCAs." (Compl. ¶ 25). Beginning in 1988, studies demonstrated that gadolinium was breaking free of bonds in linear GBCAs, in part due to its weak protective layer. *Id.* ¶ 37. Further, since 1991, studies indicated that gadolinium retention was occurring in people with normal renal function. *Id.* ¶ 54. The first major study that showed deposits of gadolinium in human tissue in patients with renal failure appeared in 1998 and in patients with normal renal function in 2004. *Id.* ¶ 38.

Smith alleged that linear GBCAs, including Omniscan, have a potentially damage-causing characteristic, a weak protective layer, which has caused "debilitating symptoms" in patients with normal renal function. *Id.* ¶¶ 44, 46. He alleged that GEHC knew for years that Omniscan "did not have very stable bonds," "could come apart easily causing significant toxicity in humans," and posed a risk to people with normal renal function. *Id.* ¶¶ 43, 54). Nevertheless, according to Smith, GEHC failed to warn consumers and healthcare providers, including Smith's own healthcare providers, of gadolinium retention on the labels of its products. Further, in 2012, GEHC corrected its label to warn of gadolinium retention in people with kidney disease or acute kidney injury, but not in people with normal renal function. *Id.* ¶¶ 29, 55. GEHC issued a new label warning of gadolinium retention in patients with normal kidney function only in May 2018. *Id.* ¶ 53.

Based on these allegations, the court reasonably can infer that GEHC failed to provide an adequate warning of the risks associated with the use of Omniscan. *See Iqbal*, 556 U.S. at 678. Accordingly, Smith sufficiently has pleaded an inadequate warning claim under the LPLA against GEHC, and GEHC's motion should be denied as to this claim. *See Rayford v. Karl Storz*

*Endoscopy Am., Inc.*, No. 15-2835, 2016 WL 4398513, at *6 (W.D. La. June 22, 2016) (finding the allegations in plaintiff's complaint created a reasonable inference that defendants "failed to provide an adequate warning of the dangers associated with the use of their product").

### 2. Breach of Express Warranty

The LPLA provides that,

> [a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

La. R.S. § 9:2800.58.

In his complaint, Smith noted that the weak protective layers of GBCAs were "not considered to be a problem as long as the contrast agent was excreted out of the body according to the claimed drug's half-life," but the "delayed elimination phase of the GBCAs," which allowed toxic gadolinium to be released into the body, was later discovered. (Compl. ¶ 39). Smith contends that as of the date of his injections, GEHC knew "Omniscan was not completely eliminated from the body, even in patients with normal renal function," yet included the "specific and unequivocal" assertion in the Pharmacokinetics section of the Omniscan label that "'Gadolinium is eliminated' from the body." *Id.,* ¶¶ 107-108. Smith also claims that members of the medical community relied on GEHC's representations in prescribing Omniscan, and he sustained damages as a result. *Id.,* ¶¶ 110-111. Had GEHC warned plaintiff and/or his healthcare providers about the true risks associated with Omniscan, Smith would not have been administered a GBCA, and would not have been afflicted with GDD. *Id.*, ¶ 32.

12

In support of its motion to dismiss, GEHC identified and referenced the operative Omniscan label that was in effect for the period from December 2010 through April 26, 2018.[6] The label stated that

> Gadodiamide is eliminated primarily in the urine with 95.4 ± 5.5% (mean ± SD) of the administered dose eliminated by 24 hours. The renal and plasma clearance rates of gadodiamide are nearly identical (1.7 and 1.8 mL/min/kg, respectively), and are similar to that of substances excreted primarily by glomerular filtration.

Nothing else in the label discusses the elimination of gadodiamide. Consequently, contrary to plaintiff's allegations, GEHC never represented that *100* percent of the Omniscan would be eliminated from the body. Where, as here, there is a conflict between the allegations in the complaint and the exhibits referenced in the complaint, the latter controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir.2004) (citation omitted).

In his opposition brief, plaintiff further noted that GEHC represented that "Omniscan does not cross the intact blood-brain barrier," when, in fact, it can cross the blood-brain barrier. (Pl. Opp. Memo., pg. 11 (citing Compl., ¶ 75). Moreover, the foregoing statement *does* appear in the Omniscan label.[7] Although plaintiff included the blood-brain barrier misrepresentation in the section of his complaint on negligent

---

[6] *See* https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/020123s037lbl.pdf (last visited on Aug. 31, 2019). The court may take judicial notice of publicly available FDA documents that are matters of public record. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir.2011).

[7] *See* https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/020123s037lbl.pdf (last visited on Aug. 31, 2019).

misrepresentation, it may be considered for purposes of his breach of express warranty claim.

On review, the undersigned finds that while not particularly fulsome, plaintiff's allegations suffice to support a breach of express warranty claim. *See Rayford*, 2016 WL 4398513, at *7 (noting that *Twombly* "does not require the plaintiff to set forth such precise, detailed allegations with respect to the breach of express warranty claim," but merely requires enough "to raise a right to relief above the speculative level"). Accordingly, GEHC's motion should be denied as to Smith's LPLA express warranty claim.

*3. Unreasonably Dangerous Design*

To maintain a design defect claim, a plaintiff must demonstrate "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage" and "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design." La. R.S. 9:2800.56.

In response to GEHC's motion, Smith noted that he pleaded "that an alternative design for Omniscan existed and was capable of preventing Plaintiff's damages" to support a claim under the LPLA for an unreasonably dangerous design. [doc. # 16 at pg. 11 (citing Compl. ¶¶ 30–33, 47(b))]. However, the cited portions of the complaint do not identify an alternative design for Omniscan. Therefore, Smith does not state a cause of action for an unreasonably dangerous design.

Insofar as Smith intended to seek leave to amend his complaint to redress his insufficient allegations, he has not included a proposed pleading with his request. Accordingly, the issue is not properly before the court.[8]

    c).     Causation and Other Arguments

GEHC also contends that "the FDA and scientific community have found no evidence of any adverse health effects in patients with normal kidney function from any trace amounts of a GBCA that may be retained in the body . . ." [doc. # 8, pgs. 1-2]. In his complaint, however, Smith pointed to studies that highlighted the toxic effects of gadolinium retention. *See* Compl., ¶¶ 36-46.

GEHC further faults plaintiff for his failure to plead when he received Omniscan, the reason he received Omniscan, when he developed his symptoms, and whether or when he was diagnosed with GDD by a medical professional. These issues, however, constitute topics for discovery, not Rule 8 pleading requirements, which mandates only fair notice of the claim(s) and the grounds upon which it rests. At this stage in the proceedings, the court only must determine whether Smith's claims meet the minimal threshold of plausibility. Under this standard, the undersigned finds that Smith sufficiently has pleaded that Omniscan is unreasonably dangerous because of inadequate warning and/or because it does not conform to an express warranty and that this proximately caused his injury. GEHC's additional arguments implicate the merits of

---

[8] Ordinarily, the court should accord plaintiff the opportunity to amend his complaint to state a claim for relief. However, because the instant motion disposes of less than all claims and parties, it is not a final judgment and remains subject to revision at any time before conclusion of the case. Fed.R.Civ.P. 54(b). Therefore, if, and when plaintiff **Error! Main Document Only.**uncovers facts sufficient to support a viable design defect claim against defendants, then he may seek leave to amend his complaint to assert the claim. **Error! Main Document Only.**It goes without saying, however, that plaintiff may not dither in his efforts.

Smith's claims and remain premature at this stage of the proceedings. Whether Smith ultimately will be able to offer sufficient proof to support his claims is more appropriate in the context of a motion for summary judgment or a trial on the merits.

## II. McKesson's Motion

Despite more expansive allegations set forth within the complaint, both movant and plaintiff agree that McKesson is not a manufacturer of Omniscan, but instead a distributor or seller of the product. Therefore, subject to certain exceptions not advanced here, plaintiff's claims against McKesson are not subject to the LPLA. Rather, Louisiana law provides that a distributor or seller is liable in tort only if it knew or should have known that the product sold was defective and failed to declare it. *Delanzo v. ABC Corp.*, 572 So.2d 648, 651 (La. App. 5th Cir. 1990) (citations omitted); *State Farm Fire & Cas. Co. v. Delta Beverage Grp. Inc.*, 401 Fed. Appx. 955, 961 n.3 (5th Cir.2010) (citations omitted).

McKesson's principal argument is that most, if not all of plaintiff's state law tort claims are preempted by federal law when, as asserted here, it is "impossible for a private party to comply with both state and federal requirements." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 609; 131 S.Ct. 2567, 2572 (2011). In *Mensing*, the Court observed that generic drug manufacturers had no means for unilaterally changing the labeling of their generic products. *In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II)*, MDL 2243, 2012 WL 181411, at *2 (D.N.J. Jan. 17, 2012) (citing *Mensing, supra*). Instead, any changes in the generic labeling required action by the drug manufacturer and/or the FDA. *Id*. Further, "when a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the judgment by a federal agency, that party cannot

16

independently satisfy those state duties for pre-emption purposes." *Id.* Consequently, the *Mensing* plaintiffs' failure-to-warn claims under state law were preempted "because it was impossible for the [generic] Manufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same." *Id*.

Although *Mensing* addressed the liability of generic drug manufacturers, McKesson contends that the same rationale may be extended to state law claims asserted against drug distributors who, like generic manufacturers, are not at liberty to change, modify, or extend the labeling. The court agrees.

Omniscan is an FDA approved product. (Compl., ¶ 41). Federal law requires FDA approval of a New Drug Application ("NDA") prior to marketing the drug in the United States. The company that owns and controls the NDA is referred to as the "applicant." 21 C.F.R. § 314.3(b). Following FDA approval of the new drug "only the applicant" may propose a change or supplement to the NDA. 21 C.F.R. § 314.71(a). GE Healthcare was the NDA applicant for Omniscan.[9] Accordingly, McKesson has no authority to unilaterally change or add to the Omniscan labeling. *In re Fosamax, supra*.

Because federal law will not permit McKesson to do what state law purports to require of it, plaintiff's incompatible state law claims are preempted, i.e., his claims for strict liability–failure to warn; negligence; negligent misrepresentation; negligence per se; breach of express

---

[9] *See* https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=020123 (last visited on Aug. 31, 2019).

warranty; fraudulent misrepresentation and concealment; and civil battery.[10] *In re Fosamax, supra* (citation omitted); *Brazil v. Janssen Research & Dev. LLC*, 196 F.Supp.3d 1351, 1365 (N.D. Ga.2016); *Amos v. Biogen Idec Inc.*, 249 F.Supp.3d 690, 700 (W.D.N.Y.2017); *Stevens v. Cmty. Health Care, Inc.*, No. 200702080, 2011 WL 6379298, at *1 (Mass. Super. Oct. 5, 2011); *Pierik v. GE Healthcare, Inc.,* Order, No. 18-07733 (N.D. Ill. June 18, 2019) [doc. # 108] (dismissing state law failure to warn claims for risks or defects associated with Omniscan against McKesson, including claims for strict liability, negligence, negligent misrepresentation, negligence per se, breach of express warranty, and fraudulent misrepresentation).[11] However, the court finds that plaintiff's implied warranty or redhibition claim is not entirely preempted.

Under Louisiana law, a buyer has a warranty "against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. Civ. Code Art. 2520. Such a defect may give a buyer the right to obtain rescission

---

[10] Plaintiff's civil law battery claim is premised upon plaintiff's lack of consent to having Omniscan retained in his body for months or years. (Compl., ¶ 132). In other words, McKesson committed a battery because it failed to disclose certain characteristics of Omniscan In fact, under Louisiana law, medical battery is treated as a lack of informed consent. *Hamilton v. Negi*, CIV.A. 09-0860, 2014 WL 1388260, at *4 (W.D. La. Mar. 31, 2014), *aff'd,* 595 Fed. Appx. 346 (5th Cir.2014) (citation omitted). Plaintiff's claim is preempted.

[11] In his brief, plaintiff cited authority to the contrary. *See e.g.*, *In re Actos® (Pioglitazone) Products Liab. Litig.*, No. 11-MD-2299, 2014 WL 12776173 (W.D. La. Sept. 5, 2014); *J.K.B. by Bennett v. Pfizer, Inc.*, No. 1305043, 2013 WL 12129385, at *6 (C.D. Cal. Nov. 4, 2013); *Dodich v. Pfizer Inc.*, No. 18-02764, 2018 WL 3584484, at *3 (N.D. Cal. July 26, 2018); and *In re Abilify (Aripiprazole) Products Liab. Litig.*, No. 16MD2734, 2018 WL 6258903, at *6 (N.D. Fla. Nov. 8, 2018). With the exception of *In re Actos*, however, the other decisions were resolved in the context of a motion to remand where the courts declined to consider the preemption argument. Further, the *In re: Actos* decision was issued after trial where evidence had been presented that the distributor played a role in the drug's labeling.

of the sale, or, if the buyer would have still bought the product but for a lesser price, a reduction of the purchase price. *Id*. As is made clear by the Louisiana Civil Code, recovery under a theory of redhibition is limited to purely economic loss and not recovery for personal injury. *Jefferson, supra*.[12] Plaintiff's redhibitory claim against McKesson remains viable and states a claim for relief.[13]

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that General Electric Company and GE Healthcare, Inc.'s motion to dismiss [doc. # 8] be GRANTED-IN-PART, and that plaintiff's non-LPLA claims for strict liability: failure to warn, negligence, negligent misrepresentation, negligence per se, breach of implied warranty, fraudulent misrepresentation/ concealment, civil battery, plus his defective design claim under the LPLA, and his request for punitive damages and attorney's fees, be DISMISSED, WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the motion to dismiss to dismiss for failure to state a claim upon which relief can be granted [doc. # 5] filed by defendant, McKesson Corporation be GRANTED-IN-PART, and that plaintiff's claims for strict liability: failure to warn, negligence, negligent misrepresentation, negligence per se, breach of express warranty,

---

[12] If a seller knows that the thing he sells has a defect but fails to declare it, then the buyer also can recover damages and attorney's fees. La. Civ. Code Art. 2545. As noted by McKesson, however, a claim for "bad faith" damages against a seller likely is preempted given McKesson's inability to change or add to the drug's labeling requirements. *See Mensing, supra*.

[13] In light of the undersigned's finding that virtually all of plaintiff's claims against McKesson are preempted, the court need not address the sufficiency of his allegations.

fraudulent misrepresentation/concealment, and civil battery, be DISMISSED, WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the motions [doc. #s 5 & 8] otherwise be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 4th day of September 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE