UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CEASAR SMITH** | **CASE NO. 3:19-CV-00492** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **GE HEALTHCARE INC ET AL** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions to dismiss for failure to state a claim upon which relief can be granted, filed by defendants General Electric Company and GE Healthcare, Inc. (collectively, "GEHC"). The motions are duplicative and raise the same arguments for dismissal, and therefore will be considered simultaneously. For reasons explained below, it is recommended that the motions [docs. #33, #43] be GRANTED, and that Smith's claims for design defect, failure-to-warn, and breach of express warranty that gadolinium is completely eliminated from the body be DISMISSED, WITH PREJUDICE, reserving only the plaintiff's claim for breach of an express warranty that gadolinium would not cross the blood-brain barrier.

**Background**

On September 4, 2019, the undersigned recommended that GEHC's motion to dismiss be granted in part, dismissing Smith's defective design claim under the Louisiana Products Liability Act (the "LPLA") in addition to his non-LPLA claims. [doc. # 23]. The undersigned dismissed Smith's breach of express warranty claim to the extent it claimed gadolinium is eliminated from the body following administration, but found the claim that GEHC represented that "Omniscan does not cross the intact blood-brain barrier," when, in fact, it can cross the blood-brain barrier to

1

be sufficient to state a claim. *Id*. The Court granted Smith leave to file an amended complaint, which he filed on September 18, 2019. [doc. # 27].

On October 17, 2019, GEHC filed a second motion to dismiss. [doc. # 33]. In response, Smtih filed a second amended complaint. [doc. # 42]. The only difference between this complaint and the first amended complaint is the addition of allegations that GEHC breached an express warranty by claiming that Omniscan does not cross the blood-brain barrier.

On December 6, 2019, GEHC filed a second motion to dismiss. [doc. # 43]. On December 16, 2019, Smith filed his memorandum in opposition. [doc. # 45]. On December 23, 2019, GEHC filed its reply. [doc. # 46]. The motions are ripe.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) sanctions dismissal when a plaintiff fails "to state a claim upon which relief can be granted." A pleading states a claim for relief when it contains, *inter alia*, "a short and plain statement…showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)). A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully, *id*.; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at

2

556. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its own judicial experience and common sense." *Iqbal*, *supra* (citation omitted). In deciding a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A court may permit a well-pleaded complaint to proceed even when "actual proof of those facts is improbable" or recovery is unlikely. *Twombly*, 550 U.S. at 556. But a court will dismiss a complaint "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida, Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008)(unpubl.)(citations and internal quotation marks omitted). "Specific facts are not necessary; the statement needs only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007)(quoting *Bell. Atl.*, 127 S.Ct. at 1958).

### Choice of Law

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This Court applies the choice of law rules of the forum state—Louisiana— to determine which state's law governs. *PHI, Inc. v. Rolls-Royce Corp.*, No. CIV.A. 08-1406, 2010 WL 883794, at *5 (W.D. La. Mar. 9, 2010) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313

3

U.S. 487, 496 (1941)). Louisiana's choice of law rules are codified in Book IV of the Louisiana Civil Code. Article 3545 provides:

> [d]elictual and quasi-delictual liability for injury caused by a product, as well as damages, whether compensatory, special, or punitive, are governed by the law of this state: (1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state.

In this products liability suit, Smith alleged that he paid for and was injected with Omniscan in Louisiana. (Compl. ¶ 13). He suffered injury and was treated for Gadolinium Deposition Disease in Louisiana. *Id*. Therefore, because he is a Louisiana domiciliary (Compl. ¶ 12), who sustained injuries in Louisiana, his claims are governed by Louisiana law.[1]

To determine Louisiana law, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante,* is a secondary law source in Louisiana." *Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 246 (5th Cir. 2014) (citation omitted). Thus, this court must look first to the LPLA, and only secondarily to judicial decisions (i.e., decisions of the Louisiana Supreme Court). *Id.*, *see also Moore v. State Farm Fire & Casualty Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citation omitted).

**Discussion**

*Sufficiency of claims under the LPLA*

1. LPLA principles

---

[1] In addition, no party contests that the substantive issues raised by defendants' motions are governed by Louisiana law. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).

The LPLA provides the exclusive remedy against a manufacturer for damages caused by its product. La. R. S. 9:2800.52. A plaintiff cannot recover under any theory of liability against a manufacturer that is not set forth in the LPLA. *Id.; see also Stahl v. Novartis Pharm Corp.*, 283 F.3d 254, 261-62 (5th Cir. 2002).

To hold a manufacturer liable under the LPLA, a plaintiff must establish "damage proximately caused by a characteristic of the product that rendered its product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R. S. 9:2800.54(A). A product is unreasonably dangerous "if and only if" it is unreasonably dangerous (1) in construction or composition; (2) in design; (3) because of inadequate warning; or (4) because it does not conform to an express warranty. La. R.S. 9:2800.54(B). Ultimately, a cause of action under the LPLA requires proof:

1. That the defendant is a manufacturer of the product;

2. That the claimant's damage was proximately caused by a characteristic of the product;

3. That the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and

4. That the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997).

2. <u>The unreasonably dangerous design claim</u>

The LPLA provides that "[a] product is unreasonably dangerous in design if, at the time the product left its manufacturer's control":

There existed an alternative design for the product that was capable of preventing the claimant's damage; and the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in

>evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. R.S. 9:2800.56.

Smith claims that GEHC could have used macrocyclic bonds instead of linear bonds, as it purportedly does in other products, that macrocyclic bond products were less likely to be retained in the body, and that the burden of using macrocyclic bonds was less than the potential harm caused by the failure to do so. (Second Am. Compl. ¶¶ 76-83). He therefore identifies a feasible alternative which he alleges would have been safer and lessened the likelihood of injury. Additional specificity is not required at this stage of the litigation to satisfy Louisiana's pleading standards. Therefore, dismissal of the defective design claim on this basis is not warranted. However, because GEHC also moves for dismissal on the basis of preemption, this recommendation does not dispose of the motion to dismiss Smith's defective design claim.

3. The failure to warn claim

Because defendants do not seek dismissal of the failure to warn claim because it is insufficient under the LPLA, it is unnecessary to consider whether this claim is sufficiently pled.

4. Breach of express warranty claim

In the original report and recommendation, the Court rejected the breach of express warranty claim in part, recommending dismissal of the charge that GEHC promised that Gadolinium would be eliminated from the body because, in fact, GEHC never represented that 100 percent of the Omniscan would be eliminated from the body. [doc. # 23, pp. 12-14]. Despite this, Smith realleges this claim in his amended complaints.

The Court again rejects the claim. At the time of Smith's injection, the label did not state that all gadolinium is eliminated from the body. Thus, any claim that GEHC breached an express

warranty by stating that "Gadolinium is eliminated" from the body despite its knowledge "that Omniscan was not completely eliminated from the body" must be dismissed.

The initial report and recommendation found sufficient Smith's allegation that GEHC breached an express warranty by claiming Omniscan does not cross the blood-brain barrier when it, in fact, purportedly does. GEHC does not seek to dismiss Smith's breach of express warranty claim on this basis, and the undersigned continues to recommend finding this allegation sufficient to support a breach of express warranty claim.

*Preemption*

1. <u>Preemption principles</u>

The Supremacy Clause of the Constitution prohibits state laws from conflicting with federal law. *Gomez v. St. Jude Medical Daig Div. Inc.*, 442 F.3d 919, 928-29 (5th Cir. 2006)(citing U.S. CONST. art. VI, cl. 2). Accordingly, "state laws that conflict with federal law are 'without effect.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008)(quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). State-law claims can be preempted expressly in a federal statute or regulation, or impliedly, where congressional intent to preempt state law is inferred. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). Without an express provision for preemption, "state law must yield to a congressional Act…[w]hen Congress intends federal law to 'occupy the field' or "to the extent of any conflict with a federal statute."" *Id.* (internal citations omitted). "Conflict preemption" exists where (1) "it is impossible for a private party to comply with both state and federal law," and (2) the state law is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372-73, 120 S.Ct. 2288.

7

The FDA, pursuant to the Federal Food, Drug, and Cosmetic Act ("FDCA"), is charged with the oversight of pharmaceutical and medical device production, sales, labeling, and marketing. *See* 21 U.S.C. § 301. Federal statutes and regulations govern the "safety information that appears on the labels of prescription drugs that are marketed in the United States." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S.Ct. 1668, 1672, 203 L.Ed. 2d 822 (2019). The FDA has a rigorous approval process for new drugs and devices that requires each product to be tested for safety and efficacy. *See* 21 U.S.C. § 355.

Dismissal under Rule 12(b)(6) may be appropriate when a successful affirmative defense appears on the face of the pleadings. *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012)(citing *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

GEHC argues that it is impossible to comply with both the federal regulatory scheme and Louisiana requirements. "Impossibility pre-emption is a demanding defense." *Wyeth v. Levine,* 555 U.S. 555, 573, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). The court "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 565, 129 S.Ct. 1187 (citations omitted). Then, the court identifies the defendant's duties under state law. *Bartlett,* 133 S.Ct. at 2473. Next, the court ascertains whether federal law expressly prohibits the defendant from complying with state law. *Id.* at 2476. If federal law does not expressly prohibit the defendant from complying with state law, the court then determines whether the defendant has presented "clear evidence" that the FDA would have prohibited the defendant from taking the necessary steps under state law. *See Levine,* 555 U.S. at 571, 129 S.Ct. 1187.

2. The unreasonably dangerous design claim

8

GEHC argues the defective design claim is preempted because of the Supreme Court's decision in *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013) and the Sixth Circuit's decision in *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281 (6th Cir. 2015). Accordingly, it contends, federal law preempts Smith's claim because federal regulations prohibited GEHC from changing Omniscan's design practices.

There can be two distinct time periods at play when considering whether a state law defective design claim is federally preempted: the post-FDA approval stage and the pre-FDA approval stage. Smith's complaint does not implicate the pre-FDA approval stage. In the absence of any allegations to support a pre-FDA approval claim, the undersigned need only consider whether a post-FDA approval claim is preempted.

In *Bartlett*, the Supreme Court recognized that "once a drug—whether generic or brand-name—is approved, the manufacturer is prohibited from making any major changes to the 'qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application.'" *Bartlett*, 133 S.Ct. at 2471 (quoting 21 C.F.R § 314.70(b)(2)(i)). Minor changes need only be reported in an annual report to FDA. § 314.70(d). "The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *PLIVA, Inc. v. Mensing*, 564 U.S. 605, 620, 131 S.Ct. 2567, 180 L.Ed. 2d 580 (2011). "[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." *Id*. at 623-24, 131 S.Ct. 2567. The alternative design proposed by Smith—switching from using linear bonds to macrocyclic bonds—is a change to the qualitative formula and thus a major change. After the FDA approves the drug, a design defect claim proposing major changes

9

is preempted. *See Guidry v. Janssen Pharmaceuticals, Inc.*, 206 F.Supp.3d 1187 (E.D. La. Aug. 29, 2016)("to the extent the plaintiff contends that the defendants should have adopted a new design [for the drug] after it was approved by the FDA, her defective design claim is preempted"); *Yates v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 808 F.3d 281, 298 (6th Cir. 2015)("[plaintiff's] post-approval design defect claim is clearly preempted by federal law"); Aaron D. Twerski, The Demise of Drug Design Litigation: Death by Federal Preemption, 68 Am. U. L. Rev. 281, 295 (2018)("…post-*Bartlett*, it would seem quite clear that, for a drug that has received FDA approval, any argument that it can be modified by a [reasonable alternative design] is federally preempted").

After the FDA approved the drug, GEHC could not have independently adopted an alternative design for Omniscan because federal drug regulations prevented GEHC from altering its composition. Accordingly, any state requirement that GEHC should have adopted an alternative design after FDA approval is preempted, and the claim should be dismissed.

3. Failure to warn claim

GEHC also argues that the failure to warn claim is preempted. Specifically, it argues (1) Smith does not allege any reasonable evidence that GEHC had a legal basis to change its label, and (2) Smith does not allege any "newly acquired" information. In response, Smith claims "GEHC's selective reading of the controlling precedent does not change the fact that it was GEHC's burden to (a) show it actually sought to change its labeling and in turn (b) the FDA informed GEHC that the change would not be allowed." [doc. # 45, pp 12-13].

In the context of conflicts between pharmaceutical products liability claims and FDA labeling regulations, "clear evidence that FDA would not have approved a change to the drug's label preempts a claim, grounded in state law, that a drug manufacturer failed to warn consumers of the

10

change-related risks associated with using the drug." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S.Ct. 1668, 1672 (2019)(quoting *Wyeth v. Levine*, 555 U.S. 555, 571 (2009)). Accordingly, the failure to warn claim is preempted if there is clear evidence that the FDA would not have approved the warning that a plaintiff alleges was required under state tort law. Whether there is clear evidence preempting the claim is a question for the court, not a jury. *Albrecht*, 139 S.Ct. at 1679. In answering the question of "clear evidence," the judge must determine whether the relevant federal and state laws 'irreconcilably conflict.'" *Id*.

The FDA's CBE regulations allow brand manufacturers to modify a product label without prior FDA approval. *Albrecht*, 139 S.Ct. at 1679. Changes under the CBE must be based on "newly acquired information" and, in relevant part, be to "add or strengthen the labeling." 21 C.F.R. § 314.70; 21 C.F.R. § 314.70(c)(6)(iii). "Newly acquired information is data, analyses, or other information not previously submitted to the Agency, which may include (but is not limited to) data derived from clinical studies, reports of adverse events, or new analyses of previously submitted data (e.g., meta-analyses) if the studies, events, or analyses *reveal risks of a different type or greater severity or frequency than previously included in submissions to the FDA*." 21 C.F.R. § 314:3(b)(emphasis added).

The amended complaint alleges that defendants have known about the risks that GBCAs pose to people with normal kidney function for years. (Second Am. Compl. ¶ 51). In addition, Smith claims that "despite this well-documented evidence of gadolinium retention, Defendants have continuously failed to warn consumers and their healthcare providers on the labels of their products." (*Id*. at ¶ 52). The well-documented evidence cited by Smith includes findings of retained gadolinium in patients' brains by Japanese researchers in 2013, findings of desecrated tissues in brains of patients injected with gadolinium by the Mayo Clinic in 2014, a safety alert by the FDA

11

in July 2015, and a warning added by the FDA's medical advisory committee in 2017. (*Id*. at ¶¶ 45-50).

Notably, the studies and reports included in Smith's complaint discuss how gadolinium can be retained, but do not demonstrate proof of any adverse effects from gadolinium retention. None of the studies shows an adverse effect "for which the evidence of a causal association satisfies the standard for inclusion in the labeling." 21 C.F.R. § 314.70(c)(6). Nor is there any factual allegation that GEHC had new information that would have permitted it to unilaterally change the label.

Smith's complaint points only to studies that showed gadolinium can be *retained*; he does not provide additional factual allegations of a causal association between a GBCA and clinically significant adverse reactions prior to the injection date, and therefore does not plead that GEHC had newly acquired information that would have allowed it to change the label under the CBE exception. *See Klein v. Bayer Healthcare Pharm. Inc.*, No. 2:18-cv-01424-APG-EJY, 2019 U.S. Dist. LEXIST 142610, 2019 WL 3945652, at *2 (D. Nev. Aug. 21, 2019); *McGrath v. Bayer Healthare Pharm. Inc.*, No. 18-cv-2134-RJD-VMS, 2019 U.S. Dist. LEXIS 105164, 2019 WL 2582530 (E.D.N.Y. Jun. 24, 2019); *Goodell v. Bayer Healthcare Pharm. Inc.*, No. 18-cv-10694-IT, 2019 U.S. Dist. LEXIS 167931, 2019 WL 4771136, at *4 (D. Mass. Sep. 30, 2019)(all concluding that the plaintiffs must provide additional factual allegations of a causal association between a GBCA and clinically significant adverse reactions prior to the injection date). The second amended complaint does not refer to a single study that has suggested a causal relationship between GBCAs and adverse health effects in patients with normal renal function.

In addition, and more importantly, there is clear evidence that the FDA would not have approved a warning about the alleged adverse health consequences of a GBCA injection. As discussed above, in May 2018, the FDA actually issued a revised warning informing the medical

community that retention occurred, but specifically adding that no causal relationship between retained gadolinium and any adverse effect in patients with normal renal function has been established. The language of the label change, specifically stating facts contrary to the warning sought by Smith, is clear evidence that the FDA would not have approved a label change which warned of such adverse effects. Given that the FDA's recent label change was made when the agency was aware of the studies cited by Smith, the FDA in fact considered and <u>rejected</u> Smith's proposed warning that gadolinium retention causes adverse health effects. Thus, the failure to warn claim is preempted and should be dismissed.

4. <u>Breach of express warranty claim</u>

Lastly, because GEHC does not seek dismissal of the express warranty claim on the basis of preemption, the court need not address whether such a claim is preempted.

## **Conclusion**

For the foregoing,

**IT IS RECOMMENDED** defendants' motions to dismiss [docs. # 33, #43] pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED**. All claims should be dismissed, except for the breach of express warranty claim contending defendants breached an express warranty that Omniscan would not cross the blood-brain barrier.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on the grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, at Monroe, Louisiana, this 31st day of March, 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE